UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re* Application of

MOUSSY SALEM,

        Applicant,

FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM JPMORGAN CHASE BANK, N.A.

Case No. 1:24-mc-00005-JPC

# FREDDY SALEM'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER

STEPTOE LLP

Nathaniel J. Kritzer
Chris Paparella
Jason E. Meade
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
nkritzer@steptoe.com
jmeade@steptoe.com

*Counsel for Freddy Salem*

Dated: May 15, 2024

I.  **PRELIMINARY STATEMENT**

Moussy Salem's opposition to Freddy Salem's motion to quash is based on two untenable propositions: (i) that the English Court did not deny discovery into the African Businesses, and (ii) that even if it did, this Court cannot consider the English Court's rejection of that discovery. Moussy's arguments are specious. The English Court clearly and specifically denied Moussy's request for discovery into the African Businesses. That denial is relevant here because it leads to the conclusion that Moussy is trying to use Section 1782 to circumvent the English Court's order, contrary to the purpose of the statute. No U.S. court has ever granted Section 1782 discovery under such circumstances. To the contrary, numerous courts have rejected applications similar to Moussy's. This Court should quash Moussy's subpoena as an improper use of Section 1782.

II.  **ARGUMENT**

A.  **Discovery Which Is Irrelevant to the Foreign Proceeding Does Not Satisfy the "For Use" Requirement**

The case law interpreting Section 1782 has established the bedrock principle that the discovery must be relevant to the underlying foreign proceeding in order to be "for use" in that proceeding. *See Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 n.7 (2d Cir. 2015) ("it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding"); *In re Asia Maritime Pacific Ltd.*, 253 F.Supp.3d 701, 706 (S.D.N.Y. 2015) ("discovery is 'for use' in a foreign proceeding if it is relevant to the subject matter of the proceeding").

Moussy misses the point when he argues this Court cannot consider *admissibility* or *discoverability*. Section 1782 does not require admissibility or discoverability because the statute's purpose is "to assist foreign tribunals in obtaining **relevant** information that the tribunals may find useful but, for reasons having no bearing on international comity, **they cannot obtain under their**

1

*own laws*." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012), quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004) (emphasis added). Admissibility and discoverability questions would "require interpretation and analysis of foreign law and such '[c]omparisons of that order can be fraught with danger.'" *Brandi-Dohrn*, 673 F.3d at 82, quoting *Intel*, 542 U.S. at 263. But this is not the case with relevance.

Moussy does not "seek[] documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a *mechanism* for such discovery." *In re Accent Delight International Ltd.*, 791 Fed. Appx. 247, 251 (2d Cir. 2019) (summary order) (emphasis in original). It is matter of common knowledge, and undisputed here, that the English legal system (unlike most civil code systems) provides for discovery. Indeed, before he launched this proceeding, Moussy asked the English Court for discovery into the African Businesses. Had that discovery been relevant, the English Court could and would have allowed Moussy to take it. The English Court determined it was irrelevant and denied it.

B.   **The English Court Denied the Discovery Because it is Irrelevant**

As discussed in Freddy's opening brief, the English Court rejected Moussy's requests for discovery into the operations of the African Businesses, ruling that it "d[id] not consider the broad issues of the African business to be a key issue in these proceedings." ECF No. 20-2 at 40-41. Further, the English Court specifically held that Moussy did not need discovery into the African Businesses to understand the Parker Services:

> I am not going to direct issue 9(a) to (e) to be of the list of issues for disclosure. They can all go. ***The reason is that I do not consider the broad issues of the African business to be a key issue in these proceedings.*** I note that there is evidence of a wider family dispute in which these documents may be relevant but my decision is not based on the allegation of collateral purpose, it is ***based on relevance***. I have looked closely at the pleadings; I have been taken to the relevant passages by counsel and I have listened to what counsel have said. It seems to me that the main relevance of the African business is the third and fourth defendants' role in it. ***To put the Parker services in context, I have considered that carefully***

2

> *and I have decided that the Parker services are sufficiently contextualised by issue 8(b), which is services did Parker supply to Morsgate pursuant to the Parker Logistics agreement, and the remainder of the other issues in 8* . . . .

ECF No. 20-2 at 40-41 (emphasis added). Moussy's various attempts to argue his way around this ruling are groundless.

Moussy's attempt to link the expenditures and operations of the African Businesses to the fees generated by the provision of Parker Services falls flat. *See* ECF No. 25 ("Opposition") at 6-7. As Moussy admits, the fees for Parker Services are based on the costs incurred by the party providing those services, not on the costs of the underlying African Businesses receiving those services. ECF No. 2 at 8 (emphasis added); *see also* Opposition at 1 ("Monline International was to provide the Parker Services to the African Businesses in return for fees calculated **based on the cost of services provided** to the African Businesses") (emphasis added). Furthermore, Moussy does not explain why ascertaining the amount of fees generated by the provision of Parker Services requires discovery beyond the actual fees paid to Monline UK for those services or the costs incurred by Monline UK to provide those services, which were how those fees were calculated.

Moussy's assertion that the English Court "expressly acknowledged the relevance of the African Businesses" is disingenuous. Opposition at 9. Moussy points to the English Court's approval of issues 8(g) and 8(h) as evidence that the English Court "[r]ecogniz[ed] the relevance of" the African Businesses. Opposition at 11.[1] But both the English Court and Moussy's own counsel plainly recognized that discovery into the African Businesses themselves was a separate matter from whether Monline UK provided services or received payments from anyone other than Morsgate. Immediately after ordering discovery into issues 8(g) and 8(h), the English Court turned

---

[1] *See* ECF No. 20-3 at 8(g) ("Has [Monline UK] supplied Parker Services or other services to persons other than Morsgate and if so when, on what terms, and in what circumstances?"), 8(h) ("What payments has [Monline UK] received since 7 June 2016 from persons other than Morsgate and what has become of them?").

3

to the next set of proposed issues—Moussy's discovery requests into the African Businesses—and Moussy's counsel expressly stated that "[t]he relevance of the African business *is a separate disclosure issue*." ECF No. 20-2 at 29 (emphasis added); *see also id.* at 40 ("the relevance as we see it to the African business allegations is primarily to establish the relationship to the African business of [Salim Levy] and [Ezra Aghai]").

Moussy's reliance on issue 10(b) ("What has become of any assets transferred to [Monline UK] from [Monline International] … or of any assets derived from them?")[2], does not support his requests for discovery into "examining the financial records showing the flow of funds between various entities (or changes to those flows)." Opposition at 12. Moussy asserts that issue 10(b) supports "tracing [] the right to provide Parker Services" and "fee revenue generated from the Parker Services," *Id*. But Moussy does not claim that either the logistics agreement or any fees from the Parker Services were transferred to any of the African Businesses, and he does not explain why the "tracing" of these assets requires discovery into the "scope of the operations of the African Businesses." *Id.*

It must be emphasized that the English Court granted Moussy substantial discovery on issues that are actually relevant. The English Court recognized that determining "the size and scope of the business opportunity which [Moussy] say[s] has been transferred away" would require "analysis … about what Parker Services were being supplied and to whom." ECF No. 20-2 at 23. That is why the English Court allowed discovery into (i) the services that were provided to Morsgate; (ii) the "payments that were made to or for the benefit of [Monline UK] by Morsgate" and "[w]hat became of those payments," (iii) whether Monline UK supplied services "to persons other than Morsgate" and under "what circumstances," and (iv) the "payments [Monline UK]

---

[2] ECF No. 20-3 at 10(b).

4

received … from persons other than Morsgate" and "what has become of them." ECF No. 20-3 at 8(b)-(h). Those requests are specifically addressed to the services rendered by Monline UK and the fees which were paid to Monline UK, *i.e.*, the services which Moussy argues would have been rendered by Monline International, and for which Monline International would have received fees, had the logistics agreement not been transferred. Those topics are within the scope of discovery in the English Case—the discovery that Moussy seeks in this proceeding is not.

### C. Comity and the Third *Intel* Factor Require Deference to the English Court's Decision

Moussy fails to identify a single case in which a U.S. court authorized Section 1782 discovery which was previously denied by the foreign court in the underlying proceeding. Moussy's citation to *In re Chevron Corp.*, 633 F.3d 153 (3d Cir. 2011) is off-point. The Court there concluded that it was unclear if the discovery sought via Section 1782 had actually been denied by the foreign court. *Id.* at 163. The applicant also sought to use the discovery in a separate arbitration proceeding and there was "no basis on which [the *Chevron* court] could hold" that the applicant was attempting to circumvent the policies of the arbitration panel. *Id.* The *Chevron* court also suggested that the foreign court "might be receptive to section 1782 evidence" because it "might offer limited discovery opportunities yet accept relevant evidence tendered to it of procured without its assistance" *Id.*[3]

---

[3] Moussy also argues that "in *Intel*, the European Commission—the foreign tribunal in which the discovery was to be used—expressly stated to the Supreme Court in *amicus curiae* briefs that it did not need or want Section 1782 assistance; nevertheless, the Supreme Court did not indicate that the European Commission's position precluded granting the application." Opposition at 14-15 (quotation marks and alterations omitted). The Court in *Intel* declined to adopt a categorical rule barring Section 1782 assistance under such circumstances, but specifically instructed courts to consider facts of this type when evaluating a Section 1782 application. 542 U.S. at 264-65 ("We decline, at this juncture, to adopt supervisory rules."). That is why they are called the *Intel* discretionary factors.

5

Moussy does not dispute that under the third *Intel* factor, this Court may consider "whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004). Moussy focuses on the phrase "foreign proof-gathering restrictions," which he argues are limited to rules which *prohibit* certain types of discovery. Opposition at 13. But the Second Circuit has made clear that "[t]he *Intel* factors are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). And the third *Intel* factor expressly contemplates the circumvention of "**other policies** of a foreign country or the United States." *Intel*, 542 U.S. at 265 (emphasis added).[4]

As the Supreme Court has explained, "[t]he animating purpose of § 1782 is comity." *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 621 (2022). Accordingly, New York district courts have "routinely rejected Section 1782 motions under Factor Three when applicants … seek another 'bite at the apple' after having already been denied recourse" by a foreign court. *In re Telegraph Media Group Ltd.*, No. 23-mc-215-JGLC, 2023 WL 5770115, at *8 (S.D.N.Y. Sep. 6, 2023), quoting *In re Top Matrix Holdings, Ltd.*, No. 18-mc-465-ER, 2020 WL 248716, at *6 (S.D.N.Y. Jan. 16, 2020); *see also In re Kreke Immobilien KG*, No. 13-mc-110-NRB, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (Section 1782 "was not intended as a vehicle to avoid or appeal an unfavorable discovery decision from a foreign tribunal," and "a district court should be vigilant against a petitioner's attempt to replace a foreign decision with one by a U.S. court") (abrogated on other grounds) (quotation marks and alterations omitted); *In re Microsoft Corp.*, 428

---

[4] As discussed in Part II.A, *supra*, Moussy's arguments about foreign admissibility and discoverability requirements are also inapposite here.

F.Supp.2d 188, 195-96 (S.D.N.Y. 2006) (abrogated on other grounds) ("a decision by this Court which would … contradict a decision [of the foreign court] … would contravene the purpose of § 1782 by pitting this Court against the [foreign court], rather than fostering cooperation between them, and would violate established principles of comity").

These principles compel the grant of Freddy's motion to quash, because the English Court has already ruled that Moussy's discovery requests into the African Businesses were ***not relevant*** to the English Case.

### D.   Moussy's Requests Are Made in Bad Faith

As the Second Circuit has held, "[i]f a § 1782 application is made in bad faith," then "the court is free to deny the application *in toto*, just as it can if discovery was sought in bad faith in domestic litigation." *Mees v. Buiter*, 893 F.3d 291, 302 n.18 (2d Cir. 2015), quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995). Moussy's insistence that he "simply seeks discovery in good faith to help him prosecute his claims in the English Proceedings" is belied by the record in this proceeding and in the English Case. Opposition at 16. The circumstances demonstrate Moussy's bad faith.

To begin with, Moussy's denial that he "seeks this discovery in bad faith for collateral purposes in connection with 'a wider family dispute'" is unconvincing under the circumstances. Opposition at 16. Although a Section 1782 application may be granted even where the discovery sought *may* have other potential uses, "[a] request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, which would be grounds for a discretionary denial of recovery." *Mees*, 893 F.3d at 299 n.10 (citation and quotation marks omitted). Moussy's argument that discovery into the African Businesses is relevant to determining the value of the cost-plus Parker Services contract is easily debunked. The English

7

Court has already denied discovery into the African Businesses as not relevant to the English Case, while noting that there is "evidence of a wider family dispute in which these documents [concerning the African Businesses] may be relevant." ECF No. 20-2 at 40-41.

Moreover, Moussy fails to rebut other, even more significant evidence of bad faith. In particular, Moussy has offered no explanation for his failure to make a "full and fair" disclosure regarding the English Court's discovery order. *In re WinNet R CJSC*, No. 16-mc-484-DLC, 2017 WL 1383918, at *9 (S.D.N.Y. Apr. 13, 2017). "As officers of the court, attorneys are subject to duties of candor, decorum, and respect for the tribunal before which they appear," obligations which are "if anything, more critical when ex parte applications are made to a court." *Id.* In an *ex parte* proceeding, a lawyer must "inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts or adverse." *Id.* (quotation marks omitted). But Moussy failed to disclose the English Court's denial of his requests to take discovery into the African Businesses. Not only that, but Moussy affirmatively represented to this Court that "the English Court has not denied similar discovery" and had "acknowledged the need for this discovery." ECF No. 2 at 22.

Moussy's lack of candor regarding the underlying English Case is suggestive of bad faith. *See, e.g., WinNet*, 2017 WL 1383918, at *9 ("A full and fair description of the pertinent litigation may very well have led the court to deny the application. At the very least, it is difficult to draw any conclusion but that [the applicant] feared that a candid description of the litigation would have undermined if not defeated its application."); *In re Application of Auto-Guadeloupe Investissement S.A.*, No. 12-mc-221-RPP, 2012 WL 4841945, *8 (S.D.N.Y. Oct. 10, 2012) (concluding that Section 1782 applicant may have acted in bad faith based on their failure to disclose critical information about the underlying proceedings in *ex parte* application").

8

Additionally, Moussy has offered no justification for his blatant violation of Rule 45. Moussy blithely insists that "any lack of prior notice was inadvertent." Opposition at 19. But "[t]he law could not be clearer concerning an attorney's responsibility when issuing third party subpoenas." *Murphy v. Board of Education of Rochester City School District*, 196 F.R.D. 220, 222 (W.D.N.Y. 2000). And Moussy not only failed to notify Freddy or the other defendants in the English Case *before* serving the subpoena on JPMorgan Chase (as Rule 45 plainly requires), but he also failed to do so at any point during the ensuing weeks. Moussy finally admitted that he had not only served the subpoena but had already obtained documents from JPMorgan Chase *only after* Freddy sought leave to intervene in this proceeding—that is, once the jig was up.

Moussy argues that Freddy has not been prejudiced by Moussy's misconduct. *See* Opposition at 19. But Moussy's misconduct has already "deprived [Freddy] of his greatest safeguard under the Rule, i.e., the ability to object to the release of the information ***prior*** to its disclosure." *Murphy*, 196 F.R.D. at 228 (emphasis added, international quotation marks omitted). Moussy was able to obtain and review documents before Freddy was able to advise this Court of the English Court's ruling on discovery into the African Businesses. *See id.* at 225 (concluding that service of subpoenas without notice "had the improper purpose of obtaining and reviewing the documents in question before opposing counsel had the opportunity to object"). Moussy has also refused, even to this day, to return or destroy the improperly-obtained documents. If the subpoena is ultimately quashed or modified, then Moussy was never actually entitled to those documents in the first place, compounding the prejudice to Freddy.

Moussy is also wrong that "the sole remedy is to provide the intervening defendant with a copy of the subpoena and any documents produced in response." Opposition at 19. This Court certainly has the authority to quash the subpoena and enter an appropriate protective order based

9

on Moussy's non-compliance with Rule 45. *See, e.g., Rebmann v. Astec, Inc.*, No. 21-cv-879-JLS(SR), 2022 WL 2345945, at *3 (W.D.N.Y. June 29, 2022).[5] Here, Moussy's "suggestion that [he] may secretly subpoena" JPMorgan Chase and "then argue about the relevance of these documents later demonstrates a distressingly unrepentant posture." *Murphy*, 196 F.R.D. at 227.

Accordingly, Moussy's bad faith conduct provides a separate and independent basis for quashing the subpoena.

### III.     CONCLUSION

For all of the foregoing reasons, the subpoena to JPMorgan Chase should be quashed, and this Court should enter a protective order requiring Moussy to destroy the improperly-obtained documents and prohibiting the future use or disclosure of the documents for any purpose.

Dated: May 15, 2024
New York, New York

STEPTOE LLP

By: /s/ Nathaniel J. Kritzer

Nathaniel J. Kritzer
Chris Paparella
Jason E. Meade
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
nkritzer@steptoe.com
jmeade@steptoe.com

*Counsel for Freddy Salem*

---

[5] *In re Hornbeam Corp.*, upon which Moussy relies, is not to the contrary. In a summary order, the Second Circuit concluded that the district court did not abuse its discretion in declining to vacate its Section 1782 authorization order or quash the subpoena, "because the newly presented facts did not alter its initial discovery ruling." 722 Fed.Appx.7, 11 (2d Cir. 2018) (summary order). *Hornbeam* is distinguishable on that basis. The Second Circuit certainly did not impose a rule that the *only* remedy for a violation of Rule 45 is to serve copies of the subpoena and documents obtained thereby upon the opposing party, and this Court retains its inherent authority to fashion an appropriate remedy under the circumstances of this case.